```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM DAYTON,                  )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Civil Action No. 05-656
                                 )
JO ANNE B. BARNHART,             )   Chief Judge Ambrose
COMMISSIONER, SOCIAL SECURITY    )   Magistrate Judge Hay
ADMINISTRATION,                  )
                                 )
          Defendant.             )
```

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [dkt. no. 9] be denied. It is further recommended that the Motion for Summary Judgment filed by the Defendant [dkt. no. 11] be granted and that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits be affirmed.

II.  REPORT

The plaintiff, William Dayton, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for disability insurance benefits ("DIB") under title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

On July 19, 1999, Mr. Dayton originally applied for disability benefits, alleging an onset date of April 15, 1998 (Tr. 15). The Commissioner denied the claim on September 16,

1999 (Tr. 15).  This decision left Mr. Dayton with a two-week unadjudicated period before his date last insured ("DLI") expired on September 30, 1999 (Tr. 15).  The Commissioner's decision became final because Mr. Dayton did not seek further administrative review (Tr. 15).

In his second application, filed on August 22, 2003, Mr. Dayton alleged an onset date of January 7, 1999 (Tr. 71-74). This application was denied (Tr. 52-55).  Thereafter, Mr. Dayton requested a hearing before an Administrative Law Judge ("ALJ")(Tr.56).

The hearing before an ALJ occurred on October 19, 2004 (Tr. 26-49).  Mr. Dayton, who was represented by counsel, and a vocational expert, Charles Cohen, Ph.D., testified at this hearing (Tr. 46-48).  The ALJ concluded in a decision dated November 22, 2004, that Mr. Dayton was not disabled (Tr. 15-20).

Mr. Dayton requested review of the ALJ's decision by the Appeals Council (Tr. 11).  The Appeals Council denied review and the decision of the ALJ thus became the Commissioner's final decision for purposes of this judicial review (Tr. 6-8).

Presently before the Court are the parties' cross-motions for summary judgment.  For the reasons that follow, the district court should deny plaintiff's motion, grant defendant's motion and affirm the Commissioner's decision to deny plaintiff's claim for DIB.

The following facts are not in dispute.[1] Mr. Dayton was born on November 23, 1954, and was forty-nine years old at the time of the ALJ's decision (Tr. 30). At the time of the hearing, Mr. Dayton resided in Pittsburgh, Pennsylvania (Tr. 30). He completed eleven grades of formal schooling and obtained a GED (Tr. 30). He had prior work experience as an inventory clerk, machine operator, machinery cleaner, and prep cook (Tr. 19, 47). Mr. Dayton alleged disability on the basis of (1) chronic bilateral knee arthritis with multiple arthroscopic surgeries; (2) left elbow impingement syndrome; (3) left shoulder bursitis; and (4) obesity (Tr. 20).

The majority of medical evidence in the record covers the period following the expiration of Mr. Dayton's insured status. Relative to the two-week period at issue here, it appears that Richard S. Gehl, M.D., an orthopaedic surgeon, treated Plaintiff from January 9, 1998 to September 30, 1999 (Tr. 136-55). Dr. Gehl's treatment notes dated April 14, 1999, documented a history of knee problems treated with arthroscopic debridement (Tr. 137). When evaluated on April 14th, Mr. Dayton reported only minimal left knee discomfort. Dr. Gehl noted Mr. Dayton could return to full duty employment on April 19, 1999

---

[1] The Court accepts and reiterates here the factual statement of the Commissioner found in her Brief as the more detailed account of Mr. Dayton's history.

(Tr. 137).  He was to return to see Dr. Gehl in one month (Tr. 137).

Upon evaluation by Dr. Gehl on September 30, 1999, Mr. Dayton reported a coccyx injury due to slipping on ice three months prior (Tr. 136).[2] X-rays verified the absence of a coccyx fracture and Plaintiff reported the absence of radiating left leg pain, numbness, or tingling (Tr. 136).  Dr. Gehl administered a cortisone injection and instructed Mr. Dayton to return for follow-up in two weeks (Tr. 136).

The records reflect that Thomas Bonacorsi, M.D., treated Mr. Dayton from July 6, 1999, to September 12, 2003 (Tr. 193-217).[3]  Dr. Bonacorsi's treatment records dated July 6, 1999, and July 14, 1999, indicated that Mr. Dayton failed to keep his scheduled appointments (Tr. 202).  Following these missed appointments, Mr. Dayton was not seen by Dr. Bonacorsi again until February 6, 2001 (Tr. 202).

On August 6, 2004, Dr. Bonacorsi completed a Medical Source Statement form regarding Mr. Dayton's ability to perform work-related activities (Tr. 237).  On this form, Dr Bonacorsi noted that Mr. Dayton could occasionally lift ten pounds,

---

[2]  As the ALJ noted, it is most unlikely that an icy condition existed in June, 1999 (Tr. 18).  In any event, it would appear that Mr. Dayton's fall was not a recent occurrence.

[3]  While it appears that Dr. Bonacorsi had been Mr. Dayton's primary care doctor since the early 1990's, the record contains no treatment notes of substance from this physician prior to February 6, 2001; the treatment records reflect two instances in July of 1999 when Mr. Dayton failed to keep his appointments with Dr. Bonacorsi. (Tr. 17, 39, 202).


stand/walk less than two hours, and sit for less than two hours (Tr. 237-38). Dr. Bonacorsi concluded that Mr. Dayton had been disabled since March 30, 1999 (Tr. 238).

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

As noted, Mr. Dayton's DIB status expired on September 30, 1999 (Tr. 15). He bears the burden of demonstrating that he became disabled on or prior to that date. 20 C.F.R. § 404.131(a)(2004). The relevant time period for establishing disability in this particular case is between September 17, 1999, the date after the Commissioner's previous determination that Mr. Dayton was not disabled, and September 30, 1999, the expiration of his DIB.

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520, but in this case only step

five is in dispute.[4]  At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[5] age, education, and past work experience, he can perform work that exists in significant numbers in the regional or national economy.  42 U.S.C. § 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).  Here, the Commissioner found that Mr. Dayton retained the residual functional capacity to perform sedentary work during the relevant period, i.e., September 17, 1999, the date of the previous determination, to September 30, 1999, Mr. Dayton's DLI.  Based upon Medical Vocational Rules 201.27 and 201.28, the Commissioner found that Mr. Dayton was not disabled (Tr. 19).

Mr. Dayton raises two challenges to the ALJ's decision.  First, Mr. Dayton argues that the ALJ failed to weigh or address the Medical Source Statement from the treating physician, Dr. Bonacorsi.  In so doing, Mr. Dayton asserts that the ALJ failed to give controlling weight to the opinion of a treating physician or to provide adequate reasons for dismissing it, in

---

[4]   The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

[5]   A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

contravention of the regulations and case law.  See Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)(Finding that "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").  The difficulty with plaintiff's argument is that the Medical Source Statement is not probative.  Moreover, the evidence of record in this case does not support Dr. Bonacorsi's statement that Mr. Dayton has been disabled since 1999.  See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988)(Finding "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence.").

      Mr. Dayton was being treated by an orthopedic surgeon, Dr. Gehl, from January 9, 1998, to September 30, 1999, for his bilateral knee osteoarthritis and his "frozen shoulder."  On April 14, 1999, shortly before the relevant period, Dr. Gehl examined Mr. Dayton's left knee and determined he was fit to "[r]eturn to work 4-19-99 full duty."  He was instructed to return to see Dr. Gehl in one month (Tr. 137).  Dr. Gehl placed no restrictions on Mr. Dayton and noted no disabling condition at the time of the April 14th evaluation.  It appears that the next time Dr. Gehl evaluated Mr. Dayton was over five months later, on September 30, 1999, when Dr. Gehl saw him for treatment stemming from a fall that had apparently occurred sometime earlier in the year.  Dr. Gehl took x-rays, which revealed no fracture.  He

7

administered a cortisone injection and advised Mr. Dayton to return in two weeks.  Nothing in the September 30th treatment notes depicts any work-related limitations or a disabling condition.  The September 30th evaluation is the only evaluation or treatment rendered during the relevant time period by any of Mr. Dayton's physicians.  The ALJ's determination that Mr. Dayton was not totally disabled and retained the RFC to perform the mild exertional requirements of sedentary work is therefore supported by substantial evidence.

Mr. Dayton claims that the ALJ erred in failing to mention much less consider Dr. Bonacorsi's Medical Source Statement, wherein he opines that Mr. Dayton has been disabled since March 30, 1999.  This Court disagrees.  The medical evidence of record simply does not support Dr. Bonacorsi's conclusion.  As discussed, there is no evidence from the treatment notes of Dr. Gehl, who evaluated Mr. Dayton during the relevant time period and very recently before then, that Mr. Dayton had any work-related limitations or a disabling condition during the period covering September 17, 1999 to September 30, 1999.  Although reported to be the family doctor, Dr. Bonacorsi did not treat or examine Mr. Dayton during the relevant period.  Dr. Bonacorsi had not treated Mr. Dayton in the few months preceding the relevant period.  The first note of actual treatment by Dr. Bonacorsi is dated February 6, 2001, when Mr. Dayton presented with respiratory issues some seventeen months

after his DLI. Importantly, the statement from Dr. Bonacorsi that Mr. Dayton's disability dates from March 30, 1999, lacks any reference to supporting medical records of his or any other physician's evaluations and treatment.

As specified in 20 C.F.R. § 404.1527(d), the so-called "treating physician rule" provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. As discussed, however, Dr. Bonacorsi's opinion is inconsistent with other substantial evidence in the case and, therefore, cannot be given controlling weight. Moreover, inasmuch as Dr. Bonacorsi rendered his opinion nearly five years after Mr. Dayton's DLI, and did not refer to any medical evidence pertinent to the relevant time frame in this case, Dr. Bonacorsi's assessment would appear to be irrelevant and, thus, the ALJ was not required to consider it.

Because Dr. Bonacorsi's opinion is inconsistent with the medical evidence of record covering the relevant period and appears to be irrelevant, the ALJ did not err by failing to discuss or credit the opinion.

Mr. Dayton's second argument is that the ALJ failed to pose an accurate hypothetical to the vocational expert ("VE"). More specifically, Mr. Dayton challenges the fact that the ALJ posed no hypothetical to the VE and only asked him to identify

9

Mr. Dayton's prior jobs by skill and exertional level.  Further, he argues that the ALJ erred by applying the grids and should have questioned the VE concerning non-exertional limitations and the effect they would have on the range of sedentary jobs.  This argument is unavailing.  "If an individual's medical-vocational status in fact is described by the grids, the regulations <u>require</u> that a particular decision be reached."  <u>Santise v. Schweiker</u>, 676 F.2d 925, 928 (3d Cir. 1982).  As the Commissioner has pointed out, the medical-vocational guidelines in themselves take into account a large number of sedentary jobs that a claimant like Mr. Dayton could perform:

> Approximately 200 separate, unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.

20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a).  The Third Circuit Court of Appeals has specifically noted and approved the taking of administrative notice of the general availability of jobs, as opposed to reliance on the identification of specific tasks by a vocational expert.  <u>Santise</u>, at 935.  Because Plaintiff's vocational profile fits Rules 201.27 and 201.28 (Tr. 19), the ALJ was required to apply the Grids and properly did so.  Thus, VE evidence was not required in this case.

      Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; <u>Edelman v.</u>

Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 21 February, 2006.

cc:  Hon. Donetta W. Ambrose
     Chief United States District Judge

     Gregory G. Paul, Esq.
     Peirce Law Offices
     707 Grant Street
     2500 Gulf Tower
     Pittsburgh, PA 15219

```
Paul E. Skirtich
Assistant United States Attorney
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219
```